IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00764-CMA-KMT

EUGENE WIDEMAN,

    Plaintiff.

v.

STATE OF COLORADO,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case involves claims that Defendant violated Plaintiff's First, Fourth, Sixth, and Fourteenth Amendment rights. This matter is before the court on "Defendants' Motion for Summary Judgment" (Doc. No. 8). Jurisdiction is asserted under 42 U.S.C. § 1983 (2008).

### STATEMENT OF THE CASE

https://ecf.cod.circ10.dcn/cgi-bin/DktRpt.pl?107026

This is the third of five cases Eugene Wideman has filed in the United States District Court for the District of Colorado pertaining to issues surrounding a judgment entered by the Pueblo County, Colorado, District Court, regarding parenting time and child support, including *Eugene Wideman Jr. v. State of Colorado, Family Enforcement Agency, et al.*, 06-cv-01423-WDM-CBS; *Eugene Wideman, Jr. v. Amelia Garcia, et al.*, 06-cv-02363-WYD-MEH; *Eugene Wideman v. Amelia Garcia*, 08-cv-00966-MSK-MJW; and *Eugene Wideman v. State of*

*Colorado, et al.*, 09-cv-00095-CMA-KMT.  These actions all arise out of the identical set of factual underpinnings although each of the cases contains both overlapping and non-overlapping claims.

In case number 06-cv-01423, Magistrate Judge Craig B. Shaffer described the factual basis for the plaintiff's claims in his Recommendation for dismissal of the case ("06-cv-01423 Rec." [Doc. No. 21, filed January 2, 2007]):

> Wideman's Complaint invokes this court's jurisdiction under 28 U.S.C. § 1331 and alleges that Defendants violated his First, Sixth, and Fourteenth Amendment rights under the U.S. Constitution "by hearing a paternity case under the wrong statute" and without jurisdiction.  Wideman further alleges that Defendants violated his Fourteenth Amendment rights by "changing his parental rights" and that the trial court discriminated against him by its decisions.  Wideman seeks money damages in the amount of $10 million "for over eight years, constantly being brought in and out of court under false pretenses," that any paternity testing be "under the supervision of the Federal Courts," and reinstatement of his parental rights.

*Id.* (citations omitted).  District Judge Walker D. Miller accepted Magistrate Judge Shaffer's Recommendation and dismissed this case without prejudice for lack of jurisdiction based on the *Rooker-Feldman* doctrine.  ("06-cv-01423 Order" [Doc. No. 24, filed March 8 2007]; Mot., Ex. 8; "06-cv-01423 Judgment" [Doc. No. 37, filed November 1, 2007].)

Case number 06-cv-02363 also revolved around certain events in connection with child care and custody disputes between Plaintiff and Ms. Garcia, the mother of Plaintiff's child.  Mr. Wideman alleged, *inter alia*, "[t]he trial court has violated the Plaintiff['s] 14th Amendment Rights, because the U.S. Supreme Court has ruled in civil cases where what is a[t] stake more than money the level of evidence is 'clear and convincing.'"  ("06-cv-02363

Compl." [Doc. No. 1, filed Nov. 27, 2006].) Magistrate Judge Hegarty recommended the case against Pueblo County be dismissed without prejudice for lack of jurisdiction. ("06-cv-02363 Rec." [Doc. No. 13, filed February 7, 2007].) District Judge Walker D. Miller accepted Magistrate Judge Hegarty's Recommendation and dismissed the case against Pueblo County without prejudice for lack of jurisdiction based on the *Rooker-Feldman* doctrine and the *Younger* abstention doctrine. ("06-cv-02363 Order" [Doc. No. 16, filed March 19, 2007]; "06-cv-02363 Judgment" [Doc. No. 30, filed November 1, 2007].) The United States Court of Appeals for the 10th Circuit affirmed the dismissals of case numbers 06-cv-01423 and 06-cv-02363, and the United States Supreme Court denied the petition for certiorari review. (Mot. Exs. 9, 10.)

Case numbers 08-cv-00966-MSK-MJW and 09-cv-00095-CMA-KMT were initiated after the instant case was filed. In case number 08-cv-00966, Plaintiff acknowledges that cases 06-cv-02363 and 06-cv-01423 were dismissed and alternatively asserts a violation of his Fourth Amendment Rights related to "Child Abuse and Assault [ ] Criminal offenses, and the Plaintiff was never convicted or charged and there is no pending criminal cases. . . . Therefore, he is refiling his complaint based on those violation[s] of his 4th Amendment Rights." ("08-cv-00966 Compl." [Doc. No. 1, filed May 8, 2009].) A motion to dismiss the entire case is pending before District Judge Marcia S. Krieger. ("08-cv-00966 Mot. to Dismiss" [Doc. No. 34, filed January 29, 2009].)

In case number 09-cv-00095, Plaintiff alleges the State of Colorado uses the law to deprive his biracial child of active interaction with his Black parent and that the defendant uses the state statutes on child custody as a tool of racial oppression in violation of the First, Fourth,

3

and Fourteenth Amendments. ("09-cv-00095 Comp." [Doc. No. 1, filed January 20, 2009].) The defendants have not entered appearances in this case.

Prior to initiating the cases filed in federal court, Plaintiff filed two cases with the Colorado Court of Appeals seeking to overturn a judgment entered by the Pueblo County District Court, Colorado, in Case No. 1997DR01028 dated July 7, 1998, *nunc pro tunc* May 22, 1998 (Mot., Ex. 1), which established parenting time and provided for the support of Plantiff's minor child. The Colorado Court of Appeals affirmed the judgment on both occasions. (Mot., Exs. 2, 3.) The Colorado Supreme Court twice denied his petitions for certiorari review. (Mot., Exs. 4, 5.) The United States Supreme Court also denied his petition for certiorari. (Mot., Ex. 6.)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint in this case on April 15, 2008, seeking compensatory damages and injunctive relief. (*Id.* at 7.) Defendant filed its motion for summary judgment on June 13, 2008. (Mot. for Summ. J. [hereinafter "Mot."].) Defendant seeks summary judgment on the basis that Plaintiff's action is barred by *res judicata*. (Mot.) Plaintiff filed his response on June 27, 2008. (Resp. to State of Colorado's Mot. for Summ. J. [hereinafter "Resp."].) Defendant filed its reply on July 10, 2008. (Reply in Supp. of Summ. J. [hereinafter "Reply].) This motion is ripe for review and recommendation.

**STANDARD OF REVIEW**

*1.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002)

*2.* *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## 3. *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1) (2008). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that

6

the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

## ANALYSIS

*1.     Plaintiff's Claims Are Barred by* **Res Judicata.**

Though sometimes used to refer to the narrower concept of claim preclusion, *res judicata* traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called collateral estoppel. *See e.g. Carter v. City of Emporia*, 815 F.2d 617, n.2 (10th Cir. 1987). The Tenth Circuit has stated:

> The doctrines of *res judicata*, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related. *Res judicata* generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action. A claim is barred by *res judicata* when the prior action involved identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires an identity of issues raised in the successive

7

proceedings and the determination of these issues by a valid final judgment to which such determination was essential.

*Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (internal citations and quotations omitted). "Both doctrines require that the party or parties against whom the earlier decision is asserted had a full and fair opportunity to litigate the claim or issue." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481 n.22 (1982)).

Since the underlying case arose in the State of Colorado, Colorado law will determine the limits of *res judicata*. Under Colorado state law, *res judicata*, "bars relitigation not only of all issues actually decided, but of all issues that might have been decided." *Pomeroy v. Waitkus*, 517, P. 2d 396, 399 (1974) (emphasis added); *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo.,1989). *Res judicata* operates as a bar to a second action on the same claim as one litigated in a prior proceeding where three elements exist: (1) a final judgment on the merits in the prior suit; (2) the prior suit involved identical claims as the claims in the present suit; and (3) the prior suit involved the same parties or their privies.[1]

One of the main policy considerations underlying *res judicata* is the interest in bringing litigation to an end. *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1258 (10th Cir. 1997); *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 327 F. Supp. 2d 1252, 1258 (D. Kan.

---

[1]Federal law has almost identical requirements concerning the application of claim preclusion in the Tenth Circuit and requires: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

2004). The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *C.I.R. v. Sunnen*, 333 U.S. 591, 597 (1948). *See Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 375, 378 (1940); *John v. United States,* 77 Fed. Cl. 788, 818 (Fed. Cl. 2007). "By preventing repetitious litigation, application of *res judicata* avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action." *Nwosun*, 124 F.3d at 1258.

Defendants assert that this case is barred by the doctrine of *res judicata*, claiming Plaintiff "is now back, yet again raising the same issues he had a full and fair opportunity to raise in his state court action. His action arises from the same transaction or series of transactions involved in his state court case, [and] involves the same parties, issues and claims. . . ." (Mot. at 2.)

### A. *Final Judgment on the Merits*

The Pueblo County, Colorado, District Court case regarding parenting time and support of Plaintiff's minor child was decided on its merits. Plaintiff filed two cases with the Colorado Court of Appeals seeking to overturn the judgment entered by the Pueblo County District Court. (Mot., Ex. 1). The Colorado Court of Appeals affirmed the judgment on both occasions. (Mot., Exs. 2, 3.) The Colorado Supreme Court twice denied his petitions for certiorari review. (Mot., Exs. 4, 5.) The United States Supreme Court also denied his petition for certiorari review. (Mot., Ex. 6.) The state court judgment is final. Therefore, this element of *res judicata* is satisfied.

## B. Identity of Parties

The parties involved in this suit are the plaintiff and the State of Colorado. (Compl. at 1.) Although Plaintiff's state court case was a domestic case involving only himself and the mother of his minor child as parties, throughout his state court appeals Plaintiff challenged the practices, policies, and procedures used by the state, county, and state court employees in making decisions related to custody, parenting time, and establishing paternity. (*See* Mot, Exs. 2, 3.) In making his state court appeals, Plaintiff asserted claims directed at state district court employees. (*Id.*) A prerequisite to a finding of *res judicata* in this action is a finding that the State of Colorado and the parties against whom Mr. Wideman asserted claims in the state court appeals are in privity. *See Frandsen*, 46 F.3d at 978.

In the Tenth Circuit, the issue of whether privity exists is a question of fact. *Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1276 (10th Cir. 1989). "There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of *res judicata* and collateral estoppel. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Id.* at 1275.

The court finds the State of Colorado and the state district court employees against whom Mr. Wideman asserted claims in his two state court appeals are in privity. Under Colorado law, "'[p]rivity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and

10

protected by the party in the litigation.'"[2] *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen*, 296 F.3d 982 (10th Cir. 2002) (quoting *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999)). Here, there clearly is an identity of interest and a working or functional relationship between the district court employees who were employed by the State of Colorado and against whom Plaintiff asserted claims in the state court action and the State of Colorado. Therefore, this element of *res judicata* is satisfied.

### C. *Identity of Claims*

Although Plaintiff's Complaint in this action is not a model of clarity, it appears he is asserting four claims for relief. In the first claim, Plaintiff states he is challenging "the Custom/Practice of the State of Colorado allowing Divorce Courts to hear custody case[s] of none-married [sic] persons . . . as being Unconstitutional" and as violating federal statutes. (Compl. at 1 [filed April 15, 2008].) Plaintiff asserts that the State of Colorado only has jurisdiction over custody matters when the two parties are involved in dissolution of marriage proceedings and that "[u]nder C.R.S. 1400,ect, [sic] there are no provisions for determining paternity . . . making the state out of compliance with [f]ederal guidelines [the state] agreed to when receiving [f]ederal [f]unds." (*Id.* at 2.) Plaintiff further claims that "[a]lleged fathers [the state] claim[s] owe child support, have never had paternity determinations, which their state courts have ruled is required prior to accessing [sic] child support." (*Id.*) The Colorado Court of

---

[2]"Federal law also incorporates state law when, as with the concept of privity, the issue is more distinctively substantive." *Hartsel Springs Ranch*, 296 F.3d at 986 (quoting *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1333 (10th Cir. 1998)).

Appeals addressed these claims in Plaintiff's second state court appeal wherein Plaintiff asserted claims that (1) the district court had no jurisdiction over paternity matters because there is no language in the Uniform Dissolution of Marriage Act giving divorce courts jurisdiction over paternity matters and because he and the mother of the child were never married; and (2) the district court violated his rights to due process and equal protection by failing to address paternity before issuing other orders. (Mot, Ex. 3 at 2–5.)

Plaintiff also alleges in his first claim for relief that the State of Colorado is sexually biased and "gives preferential treatment to women." (Compl. at 3.) The Colorado Court of Appeals also addressed this allegation in Plaintiff's first state court appeal wherein the plaintiff asserted a claim regarding the trial court's violation of his Fourteenth Amendment rights by subjecting him to a different standard than the mother (Mot, Ex. 2 at 2) and in Plaintiff's second state court appeal wherein the plaintiff asserted a claim that the district court discriminated against him and gave preferential treatment to the mother (*id.*, Ex. 3 at 7.)

Plaintiff's second claim for relief challenges "the Custom/Practice of using Attorneys (Guardian Ad Litem) to make parenting time recommendations, or to write reports on the state of [ ] relationships between a parent and child" as violating the First and Fourteenth Amendments and the Colorado law. (Compl. at 1.) It appears this is the first time Plaintiff has asserted this specific claim. To the extent Plaintiff is asserting new allegations, the claim is barred by the *Rooker-Feldman* doctrine and will be addressed below. However, in his first state court appeal, Plaintiff asserted a claim related to the fees claimed by the guardian ad litem, in which the Colorado Court of Appeals affirmed the district court's judgment and found "[t]he record does

not support father's remaining contentions that the guardian ad litem acted improperly." (Mot., Ex. 2 at 7–8.) The second claim for relief contained in the Complaint for this case also contains an allegation that "Pueblo County, Colorado, and other small towns in Colorado, where all the attorneys are White or Hispanic, [set up] a systematic racial bias toward African-Americans, especially Males, due to the historically antagonistic relationship between whites and black males in America. . . ." (Compl. at 4.) The Colorado Court of Appeals addressed this issue in the first state court appeal in dealing with Plaintiff's allegation that the trial court should have recused herself because she had discriminated against him. (Mot, Ex. 2 at 8.) The Colorado Court of Appeals noted that "the record indicates that [Mr. Wideman] repeatedly accused everyone involved in the case of racial discrimination." (*Id.*) The Colorado Court of Appeals also rejected this allegation in the second state court appeal, wherein Plaintiff asserted that he had been discriminated against by the district court because he is an African-American male. (Mot., Ex. 3 at 7–8.)

In the third claim, Plaintiff states he is challenging "the State's use of the Evidentiary Standard of [ ]Preponderance of Evidence in custody cases, when dealing with Parental Responsibility, Parenting Time, and Suspension of Parenting. (*Id.* at 2.) The Colorado Court of Appeals dealt with this issue in the second state court appeal, wherein Mr. Wideman asserted the same claim regarding the district court's denial of his rights to due process and equal protection by altering, changing or suspending his parental rights based on a preponderance of the evidence and without a hearing. (Mot, Ex. 3 at 3–4, 5–6.)

13

In the fourth claim for relief, Plaintiff states he is suing the State of Colorado because of the State's act of retaliation against him after the filing of cases 06-cv-02363-WYD-MEH and 06-cv-01423-WDM-CBS in violation of his First Amendment right to petition federal courts. (Compl. at 5–7.) Plaintiff also asserts Defendant violated his Fourth Amendment rights by "confiscating funds that were not a party to any judicial hearing." (*Id.*) Plaintiff made this same argument in his second state court appeal related to funds "confiscated" during a period of time preceding this lawsuit. (Mot., Ex. 3 at 6.) The Colorado Court of Appeals rejected the argument, stating:

> Father also suggests that the court violated his right to due process when it ruled on mother's March 2005 motion for entry of judgment against him without affording him a hearing. However, each child support installment which matures under a child support order becomes a judgment debt similar to any other judgment for money, and execution may issue upon it. Thus the district court had power to enter a judgment for unpaid child support without notice to the father.

(Mot., Ex. 3 at 6.) In this case, Plaintiff alleges Pueblo County Court "set up false child support arrears" dating back to 2004. (Compl. at 6.) Plaintiff states after he filed his suits in this court the Child Enforcement Agency "retaliated" against him by garnishing his bank account for these arrears. (*Id.*) Because the time period differs and the plaintiff asserts a claim for retaliation, this claim may be construed as being new. However, to the extent Plaintiff is asserting new allegations, the claim is barred by the *Rooker-Feldman* doctrine and will be addressed below.

The court finds the claims, other than those deemed "new" herein, asserted by Plaintiff satisfy the third element of *res judicata*. The Tenth Circuit has adopted the transactional approach of the Restatement (Second) of Judgments to determine what constitutes a "cause of

14

action" for *res judicata* purposes. *King v. Union Oil Co. of Calif.*, 117 F.3d 443, 445 (10th Cir. 1997). The "transactional" approach provides:

> [A] final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What constitutes a "transaction" or a "series" is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit.

*King*, 117 F.3d at 445 (citing *Lowell Staats Mining Co.*, 878 F.2d at 1274). *See also Petromanagement Corp.*, 835 F.2d at 1335; RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982). This court finds that this action arose out of the state court action involving the custody and support actions, and the two actions are "related in time, space, origin, or motivation" and they "form a convenient trial unit." *King* at 445.

Plaintiff in this case is attempting to pick low-hanging fruit from the tree of jurisprudence and obtain the forbidden second bite of the apple. There is no genuine issue as to any material fact, and summary judgment should be granted in favor of Defendant and against Plaintiff as Plaintiff's claims are barred by *res judicata*.

**2. *Any New Allegations in Plaintiff's Second and Fourth Claims for Relief Are Barred by the* Rooker-Feldman *Doctrine and must Be Dismissed for Lack of Jurisdiction*.**

To the extent Plaintiff's asserts new allegations in his second and fourth claims for relief, the court finds the claims are directly related to orders entered by the state court related to child support. (*Id.*) The *Rooker-Feldman* doctrine is a jurisdictional prohibition that is based on 28 U.S.C. § 1257, which holds that federal review of state court judgments may be obtained only in the United States Supreme Court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). *Rooker-*

*Feldman* not only bars consideration of issues that were actually presented to and decided by a state court, but it also bars consideration of constitutional claims that are "inextricably intertwined with" issues that were ruled upon by a state court. *See Feldman*, 460 U.S. at 483–84 n.16. A constitutional claim is inextricably intertwined with issues reached by a state court "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). In short, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse some action or decision by a state court, or would effectively void its ruling. *Id.*

To determine whether claims are inextricably intertwined, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996); *see also Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 707 (10th Cir. 2004) (holding that courts should ask "'whether the state court judgment caused, actually and proximately, the injury for which [the party] seeks redress'") (quoting *Kenman Engineering v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002)). Plaintiff's allegations fall squarely within the scope of the *Rooker-Feldman* doctrine and, therefore, preclude this court from reviewing them.

While Plaintiff does set forth allegations that his constitutional rights have been violated, ultimately he is seeking to void state court orders.[3] Under *Rooker-Feldman*, the redress for these

---

[3]The court notes, contrary to his argument in his response, that Plaintiff also asserted claims for violations of his First, Fifth, and Fourteenth Amendment rights in his state court

alleged injuries is through the state court appellate process to the United States Supreme Court. Federal district courts can neither address these injuries nor review the state court proceedings. 28 U.S.C. § 1257 (2008).

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion for Summary Judgment" (Doc. No. 8) be GRANTED. The court further RECOMMENDS that this case be dismissed in its entirety with prejudice as barred by *res judicata*. In the alternative, the court RECOMMENDS that the new allegations in claims two and four be dismissed without prejudice as being precluded by the *Rooker-Feldman* doctrine and that the remaining claims be dismissed with prejudice as barred by *res judicata*.

### ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the 6district court or for appellate review." *United States v. One Parcel of Real Property Known As*

---

appeals. (*See* Mot., Exs. 2, 3.)

*2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 9th of February, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge